BOYSEN *v*. FRINK.

Opinion delivered October 15, 1906.

1. BROKER—CONDITIONAL COMMISSION.—Where a real estate broker's commission is conditioned on payment of the price, it is his duty to furnish a customer able and willing to comply with the proposed sale before he is entitled to his commission. (Page 258.)

2. SAME—WHEN COMMISSION EARNED.—Where a real estate broker was employed to procure a purchaser for real estate under an agreement that his commission should be payable one-half when one-third of the price was paid and the other half when one-half of the price was paid, and the landowner, after endeavoring to collect the purchase money notes, compromised and surrendered the notes on receiving a sum less than one-third of the purchase money, the landowner's liability for the broker's commission will depend on whether the purchase money notes could by proper diligence have been collected, at least so much as would have earned the broker's commission. (Page 258.)

Appeal from Arkansas Circuit Court; *George M. Chapline*, Judge; reversed.

## STATEMENT BY THE COURT.

Boysen was a real estate dealer, and engaged Frink to work for him in the sales of land. 'A written contract existed between them, the pertinent part of it being as follows:

"MR. L. M. FRINK, Colfax, Ill.

"Hereby confirming your appointment as agent for the sale of my lands in Arkansas, I agree to pay you a commission of seventy-five (75) cents per acre for every acre of land sold by me to customers sent or bought by you or your subagents, said commission to be paid you, one-half when one-third of purchase price has been paid, the other one-half of said commission whenever one-half of the purchase price has been paid in cash to me."

Frink brought F. S. Hall to the purchase of a tract of 801 acres of land in Prairie County, Ark., at $16.25 per acre; Hall concluded the contract with an authorized agent of appellant; the terms of sale were a payment of $215 in ten days, evidenced by a note, and the payment of two other deferred notes of $3,250 each.

Hall failed to pay any of the notes, and about six months after the contract a friend of his, an attorney, compromised the matter with appellant by paying $1,000 and receiving back Hall's notes.

Frink sued Boysen for his commission at 75 cents per acre, $600.75.

There was evidence tending to prove that Hall sold out all his holdings at his home and went to parts unknown; that Boysen made diligent efforts to find him and to find property of his out of which the notes could be collected, and was unable to do so, and expended considerable sums in these efforts, and accepted the $1,000 as reimbursement for losses and expenditures caused by Hall's breach of contract. On the other hand, there was evidence tending to prove that Hall had a stock farm near Cropsey, Ill., of considerable value, stocked with a quantity of grain and live stock which might have been subjected to the payment of the notes if the matter of their collection had been properly attended to; and that Boysen had knowledge of these facts. The court gave these instructions:

"1.  If you believe from the evidence that the plaintiff under the contract sold the 800 acres of land to Mr. Hall, and the notes were accepted by the defendant, and that subsequently the defendant, without the knowledge of the plaintiff, and without the consent of the plaintiff, surrendered the notes to the purchaser, and received from the purchaser $1,000, and canceled said contract of purchase, the defendant in doing so made himself liable to the plaintiff, as much so as if he had made the deed to the purchaser and received payment in full for said land."

"2.  If you find from the evidence in this case that this contract was canceled, and $1,000 received by the defendant in this case, then the plaintiff in this suit would be entitled to recover amount sued for, and your verdict would be for the plaintiff."

The court refused this instruction asked by appellant: "If you find from the evidence that the defendant, A. Boysen, held himself at all times ready to perform his part of the contract, and the sale was not consummated through no fault of his, but was the fault of the purchaser furnished by the plaintiff herein, plaintiff would not be entitled to recover, and you will find for the defendant."

Frink recovered the full amount of commission sued for, and Boysen appealed.

*J. L. Ingram* and *John F. Park,* for appellant.

1.  To entitle an agent to his commission, he must furnish a purchaser ready, able and willing to purchase upon the prescribed terms, and within the time limited by the contract.  Rapalje on Real Estate Brokers, § 62.

2.  A broker or agent employed to sell real estate must produce a person who ultimately becomes a purchaser before he is entitled to commission, unless his failure to do so is occasioned by the fault of the vendor.  1 Am. Rep. 49; 20 How. 221; 32 Eng. Com. Law, 641; 29 Md. 512, and authorities *postea.*

3.  The first and second instructions given by the court on its own motion are erroneous in this: they take away from the consideration of the jury the question as to whose fault it was that the sale was not consummated, the question of the ability

and willingness of appellant to carry out in good faith the trade, and in effect instructs the jury that appellant, notwithstanding his efforts to enforce the contract, would still be liable to appellee for the full amount of the commission if he canceled the contract without appellee's knowledge and consent. They also leave out of consideration the stipulation of the contract as to when the commission should be due. Payment of one-third of the purchase price is a condition precedent to payment of any part of the commission. Performance of a condition precedent must precede performance of the condition dependent upon it, unless waived. 55 Ark. 376; 21 Ia. 235; 15 Ia. 64; 12 Ia. 77; 2 Kent's Com. 509; 63 N. Y. 445; 36 N. J. L. 328; 17 Wash. 209; 49 Pac. 237; 50 Pac. 1024; 87 Cal. 115; 25 Pac. 266; 15 S. W. 1076.

*Edwin Pettit* and *C. E. Pettit,* for appellee.

1. The commission was earned when the land was sold by appellant to Hall, and paid for by the execution of notes by the latter and delivered to appellant. Failure of purchaser to pay deferred payments or to comply with his contract is immaterial. 23 Am. & Eng. Enc. Law (2 Ed.), 917.

2. In the absence of evidence to the contrary, the customer will be presumed to be responsible, and the burden is on the principal to establish the customer's pecuniary irresponsibility, and not on the broker to establish his responsibility. 4 Am. & Eng. Enc. Law (2 Ed.), 975; Rapalje, R. E. Brokers, 243; 45 N. W. 15; 96 Ga. 518; 16 Col. 271; 29 L. R. A. 215; 82 Ill. App. 558; 64 N. E. 643; 44 Atl. 484; 4 Daly (N. Y.), 268; 7 Enc. of Evidence, 482.

3. Appellant waived the payment of purchase money. Appellee's remuneration was not to be earned on a contingency, but the contingency simply marked the time of payment for services already rendered. When appellant by his own act prevented the happening of such contingency, appellee's money became due on demand. Bishop on Cont., art. 792; 55 Ark. 376, 29 Kan. 289. One surrendering notes out of the proceeds of which, on collection, another is to receive commission can not be heard to say that the maker was insolvent when the notes

were delivered. 61 Pac. 299; 10 App. Div. Sup. Ct. N. Y. 85. See, also, 57 S. W. 179; 191 Ill. 645; 54 Cal. 229; 1 Am. & Eng. Enc. Law (2 Ed.), 1096; 108 Fed. 739; 42 N. W. 1085; 77 Mo. 645.

HILL, C. J., (after stating the facts.) It is the duty of the broker to furnish a customer able and willing to comply with the proposed sale before he is entitled to commission when the commission is conditioned on payment of price. Rapalje on Real Estate Brokers, § § 61, 62.

To be sure that his purchasers were responsible, Boysen stipulated in the contract with his agent that no part of the commission should be paid until one-third of the purchase price was paid; then one-half of the commission became due, and the remainder when one-half of the purchase price was paid. Now, Boysen could not, after having accepted a purchaser's notes, defeat the broker's commission by surrendering those notes with or without compensation for such surrender unless the purchaser was not a responsible one who could not perform the contract; at least to the extent of Frink's interest in its fulfillment. If the purchaser was insolvent, no harm could be worked to Frink by surrendering worthless notes; nor could any harm be worked him if the purchaser was irresponsible and yet paid Boysen something (less than one-third the purchase price) for return of the notes, because Frink could not recover any commission until payment of one-third of the purchase price was made, nor all of his commission until payment of one-half the purchase price was made. On the other hand, Boysen could not defeat Frink's commission by an unnecessary compromise. If the notes were good when taken, at least for so much as would earn Frink's commission, or part of it, and Boysen could have enforced their collection, then he can not avoid Frink's commission by such compromise.

If the payment of the $1,000 for Hall's notes was accepted in good faith as a reimbursement of losses for Hall's breach of contract, and the contract to the extent of Frink's interest could not have been enforced, Frink has no case. If the $1,000 was not in good faith accepted as a settlement of an otherwise uncollectible debt, but was a good business deal or to the advantage of Boysen to accept it and hold the land instead of enforcing a

valid sale, he must pay Frink before casting up his profits on the venture.

The instructions given by the court were correct, so far as they went, but they ignored the duty of Frink to furnish a responsible purchaser, and ignored the evidence tending to prove the irresponsibility of Hall, and the diligence of Boysen to collect and his inability to do so, and the other matters discussed herein.

Appellant's evidence requires that the other phases of the question than those stated in the instructions be sent to the jury.

Other questions are presented on both sides, and all have been considered, but none are of sufficient importance, from the view the court takes of these instructions, to require discussion.

Judgment reversed, and cause remanded for new trial.