STRAUBE *v.* SPENCER.

VENDOR AND PURCHASER—NOVATION—RELEASE OF VENDEES.

In action of assumpsit by vendors against land contract purchasers for past-due payments, record *held,* insufficient to establish novation of parties, where there was no definite understanding between plaintiffs and defendants, at the time of latter's assignment to third parties who assumed vendees' liability, that defendants were released, nor anything in plaintiffs' subsequent conduct indicative of a fixed intention on their part to do so, although they did not communicate to defendants 'fact of assignees' defaults for a considerable time.

Appeal from Jackson; Simpson (John), J. Submitted June 7, 1934. (Docket No. 54, Calendar No. 37,694.) Decided October 1, 1934. Rehearing denied December 11, 1934.

Assumpsit by William N. Straube and Mary Agnes Straube against Dean S. Spencer and Grace R. Spencer for sums due under a land contract. Judgment for defendants. Plaintiffs appeal. Reversed, and judgment ordered entered for plaintiffs.

*Reading & Reading,* for plaintiffs.

*Bisbee, McCone, Wilson, King & Kendall* and *Norman E. Leslie,* for defendants.

NORTH, J. Plaintiffs on August 19, 1925, entered into a land contract with defendants whereby the latter purchased a parcel of land in the city of Ann Arbor. The total purchase price was $8,500, down payment $1,250 and balance in monthly instalments. October 6, 1928, defendants assigned their vendees' interest to Allan H. Paton and Dugald Duncanson. The assignees agreed ''to assume and fulfill all the obligations'' of the contract. For approximately one year after the assignment the assignees made payments to plaintiffs as required by the contract, but thereafter payments were irregular and the assignees at all times were in default. On April 4, 1932, plaintiffs began this suit in assumpsit to recover from defendants $1,453, the amount past due and unpaid on the contract as of March 31, 1932.

Defendants' answer sets up cancellation of the contract, discharge of liability and estoppel. Also, at least in their amended answer, defendants plead novation. On trial without a jury the court found novation and rendered judgment in favor of defendants. Plaintiffs have appealed.

Notwithstanding other defenses above noted decision turns on the question of novation. It is stated in appellees' brief:

"It appears fair to state that the word 'estoppel' cannot be accurately employed in this argument. It is recognized that the necessary elements of duty cannot be claimed to exist. It is apparent that the use of the word 'estoppel' and an analysis of its application to the instant case show that it is in reality an approach to the theory of novation in the sense that the acts and conduct of plaintiffs are so clearly indicative of a novation that they cannot now be heard to say that they did not intend a novation. * * * This case appears to present a clear question of law for determination by this court. As stated at the outset of this brief the whole inquiry is whether or not there was a novation."

What in general constitutes novation need not be here stated. This subject has received consideration in numerous decisions of this court. Reference is made to *Harrington-Wiard Co.* v. *Blomstrom Manfg. Co.,* 166 Mich. 276; *Ceabuske* v. *Smolarz,* 229 Mich. 100; *Epworth Assembly* v. *Railway,* 236 Mich. 565, and *Husted* v. *Pogue,* 249 Mich. 410. In the instant case it is conceded there was no written agreement as the basis of the alleged novation. But appellees assert that the conduct of plaintiffs was for a considerable period of such a character that we should hold under the facts and circumstances here presented that plaintiffs accepted Paton and Duncanson as vendees in the place of defendants, thus consummating a novation of parties. Appellees stress the following facts: (1) before assigning their vendees' interest in this contract, Mr. Spencer interviewed Mr. Straube. (2) Paton and Duncanson were originally plaintiffs' agents and

for some time received defendants' contract payments and accounted for them to plaintiffs. (3) Plaintiffs made no objection to the assignment. (4) Although defendants' assignees were in default for some considerable time, plaintiffs did not communicate with defendants relative to the contract indebtedness, but instead offered to take the property back if defendants' assignees would pay taxes then in arrears, and subsequently offered to destroy the contract upon payment of one-half of delinquent taxes by defendants' assignees. (5) Mr. Straube at one time attempted to collect rental due from a tenant in possession under Paton and Duncanson. (6) It appears from the testimony that until Mr. Straube was so advised by his attorney he was not aware that he could claim that defendants were liable on this contract. Touching his interview with Mr. Straube, defendant Spencer testified:

"I can state only in a general way what the conversation was. Of course, I was very anxious to get rid of the house because I had moved to Jackson. * * * My recollection is that it was a very general conversation; * * * that it (the property) was to be turned over to his agent, as I understood it; at least, the people with whom I had done all the business for him, and that he had no objection—was very glad to."

Then in response to a leading question the witness further testified:

"Q. In other words, he was taking Allan H. Paton and Dugald Duncanson in your place on the contract as purchasers?

"A. That is the best of my recollection. * * * At the time I signed this agreement (the assignment of the contract) it was absolutely my intention

to be relieved from liability under the contract. * * * I do not think there was anything said between me and Mr. Straube in regard to my being released."

Notwithstanding the course of conduct on the part of the respective parties above noted, we are not persuaded that there was a novation. We think it clearly appears from this record that at the time of the assignment of the vendees' interest in this contract none of the parties to this suit considered whether as a legal consequence of that transaction defendants were released from their contract obligation. Certainly there was no definite understanding at that time in that particular between plaintiffs and defendants. Nor is there anything in the subsequent conduct of plaintiffs which is at all indicative of a fixed intention on their part to release defendants. Instead the course of conduct on the part of all parties concerned is typical of that which usually occurs incident to the assignment of a vendee's interest in a land contract. There is testimony in this record that plaintiffs did not learn of the assignment to Paton and Duncanson until three or four weeks after the assignment was consummated. No claim is made that defendants requested of plaintiffs a release from the contract liability or that defendants at any time prior to suit definitely advised plaintiffs of a claimed release. At no time have the vendors exercised any authority over the property which was indicative of a cancellation of the contract. A careful review of the record in this case leads to the conclusion that the circuit judge was in error in finding that defendants were released by novation from their obligation as vendees in this land contract. The judgment en-

tered in the circuit court will be set aside and the case remanded for entry of judgment in accordance herewith.  Plaintiff will have costs of both courts.

Nelson Sharpe, C. J., and Potter, Fead, Wiest, Butzel, Bushnell, and Edward M. Sharpe, JJ., concurred.